# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| THOMAS GENE PELTIER, | CV 21-65-GF-BMM |
| Plaintiff, | |
| vs. | **ORDER** |
| WARDEN MCTIGHE; CAPTAIN WIRSHING; ASSISTANT WARDEN NELSON; CHAPLAIN JOHNSON; CORE CIVIC AMERICA, | |
| Defendants. | |

Plaintiff Thomas Gene Peltier ("Peltier"), an incarcerated person proceeding pro se, alleges that Defendants violated his First Amendment right to Free Exercise of his Native American religion and his Fourteenth Amendment right to Equal Protection. Both claims stem from Crossroads Correctional Center ("CCC")'s cancellation of two sweat lodge ceremonies in 2019. (*See* Doc. 11.) Defendants seek summary judgment on the ground that no constitutional violations occurred. (Docs. 40 & 41.) The Court will grant Defendants' motion for the reasons set forth below.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact proves material if it impacts the outcome

of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See*. Courts exempt *pro se* parties from "*strict* compliance with the summary judgment rules." *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018). Pro se parties are "not exempt[ed] . . . from *all* compliance," however, such as the requirement to identify or submit competent evidence in support of their claims. *Id.*

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 34, 42, 42-1, 45, 45-2), and viewed in the light most favorable to Peltier. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). Plaintiff Peltier was incarcerated at the Crossroads Correctional Center ("CCC") in Shelby, Montana, at all times relevant to this action. *See* Statement of Undisputed Facts "SUF" (Doc. 45 ⁋ 7.) Defendant Patrick McTighe was the former Warden at CCC. (*Id*. ⁋ 2.) Defendant Chaplain Johnston is the current chaplain at CCC. (*Id*. at ⁋ 5.) Defendant Captain Wirshing is

a correctional officer at CCC. (*Id*. at ¶ 2.) Defendant CoreCivic owns and operates CCC. (*Id*. at ¶ 6.) Defendant Assistant Warden Nelson passed away while the action proceedings were pending. (*See* Suggestion of Death, Doc. 33.)

Peltier is a Native American man who observes both traditional Native religious ceremonies, including the sweat lodge ceremony, as well as Christianity. (*See* Doc. 34 at ¶ 4); *see also* (Doc. 45-2.) CCC generally held sweat lodges once per week on Sundays during the relevant time period. (Doc. 45 at ¶ 5); *see also* (Doc. 42-3) (outlining CCC's Religious Program Schedule). One document provided by Defendants appears to contain a typographical error, stating that sweat lodge ceremonies were offered "every day." (Doc. 45.) The Court interprets this to mean "every week" based upon on other documents provided by Defendants.

In relation to religious services, CCC applies CoreCivic Policy 20-4. (*See* Doc. 42-1 at 11–18.) At the time of Peltier's incarceration at CCC, the facility offered the following Native American religious spiritual and ceremonial activities: sweat lodge ceremony, pipe ceremony, drum group, and talking circle. (*Id*.) The sweat lodge ceremony is the only allowable religious activity at CCC that "may not be under direct supervision and line of sight of a correctional officer or RAC staff member." (*Id*. at 11.) While a correctional officer may monitor activities in the sweat area, they could not enter the sweat lodge. (*Id*. at 15.) Accordingly, CCC adopted additional guidelines to clarify the relevant procedures surrounding sweat lodge

activities. (*Id*. at 11.) The guidelines provided that the sweat lodge ceremony would generally occur on a weekly basis and could be cancelled when:

1. The temperature in degrees combined with the wind in miles per hour reaches a wind chill factor of 0 degrees or below;

2. There are fire bans by the State, County or DOC authorities due to high fire danger conditions; or

3. There are facility lockdowns, emergencies, gang activity, or other documented security concerns.

(*Id*. at 17.) The guidelines also provide that if sweat lodge ceremonies have been cancelled for two or more consecutive weeks, consideration will be made to allow for a substitution day based on the facility schedule. (*Id*.) The Warden possesses discretion to alter or depart from the guidelines should they "determine[] that security interests justify such action." (*Id*. at 11.)

CCC follows Montana State Prison Procedure 5.6.1., which outlines MSP's religious programming guidelines. CCC aims to extend programming and practices consistent with that offered at MSP. (Doc. 45 at ¶ 12.)

CCC cancelled a sweat lodge ceremony scheduled for September 22, 2019, due to fire danger determined by Toole County, Montana. CCC cancelled a sweat lodge ceremony scheduled for September 29, 2019, due to inclement weather and a winter storm warning determined by Toole County. (Doc. 45 at ¶¶ 19–20). CCC scheduled an indoors talking circle as a replacement activity for the cancelled sweat lodge on September 29, 2019. (*Id*. at ¶ 21.) Additionally, following the two

4

consecutively cancelled sweat lodge ceremonies, CCC held a make-up sweat lodge ceremony for the general population on October 4, 2019. (*Id.* at ¶ 22.) It does not appear that Peltier attended the talking circle or the make-up sweat lodge ceremony. (*See* Doc. 42-2 at 296, 340.) Peltier contends that the two sweat lodge ceremonies at issue were not cancelled for legitimate reasons and CCC's proffered bases prove pretextual. (Doc. 11 at 10–14.) Peltier claims that the cancellations violated his First Amendment right to free exercise of his religion. (*Id.*)

A prearranged indoor event with a national Christian group called "Rock of Ages" was held at CCC on October 8, 2019. Extra security personnel were present to accommodate this event. (Doc. 45, ¶ 24.) Peltier alleges that accommodations being made for the Rock of Ages event, in the wake of the cancellation of Native American sweat lodge ceremonies, establishes a violation of his right to equal protection under the Fourteenth Amendment. (Doc. 11 at 10–14.) Peltier filed an informal grievance with CCC personnel following the cancelled ceremonies. (Doc. 45-2.) CCC denied the grievance because Peltier had not designated "Native American" as his religious preference. (*Id.* at 1)

Peltier filed his original Complaint in June 2021. (Doc. 2) Peltier filed an Amended Complaint on November 9, 2021. (Doc. 11). Defendants filed a motion for summary judgment on October 14, 2022,. (*See* Docs. 40, 41, 45.) The Court stayed the action while Peltier completed a treatment program. (Doc. 46.) The Court

5

lifted the stay on February 22, 2023. (Doc. 49.) Peltier responded to the summary judgment motion on April 11, 2023. (Doc. 50.) Peltier did not directly address Defendants' summary judgment arguments in the response. Peltier instead claims that Defendants' failed to properly educate their employees, that CCC suffers from staffing shortages, and that Defendants' have failed to demonstrate a sensitivity toward Montana's 8 federally recognized tribes. (*Id.* at 2–3.) Defendants replied on April 25, 2023. (Doc. 51.)

## ANALYSIS

Defendants contend that they are entitled to summary judgment as a matter of law on Peltier's First Amendment Free exercise Claim. Defendants assert that the Native American religious practices guidelines and policies at issue prove rationally related to legitimate penological interests. Defendants also argue that Peltier's Fourteenth Amendment Equal Protection claim fails because CCC provided Peltier a reasonable opportunity to practice his religion.

### I.    First Amendment Claim.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. The First Amendment applies to the States through the due process clause of the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Incarcerated people retain their First Amendment rights, including the free

exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

"The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). "[P]rison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. An incarcerated person must show that their claim involves a sincerely held religious belief that is consistent with their faith for the Free Exercise Clause to apply. *Shakur v. Schriro*, 514 F. 3d 1114, 1119 (9th Cir. 2013).

Under the First Amendment's Free Exercise Clause, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Under *Turner*, courts consider whether (1) there is a "valid rational connection" between the challenged regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right in question are available; (3) what impact the accommodation of this exercise would have on prison personnel and resources; and (4) whether the prison regulation is unreasonable because obvious, non-obtrusive alternatives exist. *Id*. at 89–90.

As set forth above, Peltier had not designated his religious preference as

7

"Native American" pursuant to facility policy at the time of the cancellation of the September 2019 sweat lodge ceremonies. Peltier did not attempt to attend either of the cancelled sweat lodge ceremonies. It appears that Peltier did not begin attending Native American religious programming at CCC until October 29, 2019. (*See* Doc. 42-2 at 317.) The records before the Court demonstrate that from October 29, 2019 on, Peltier attended pipe ceremonies, special pipe ceremonies, and sweat lodge ceremonies. (*Id.* at 317–71.) Defendants do not dispute the sincerity of Peltier's religious beliefs. The Court presumes, for purposes of this matter, that Peltier's beliefs are sincerely held. The Court will proceed to analyze whether CCC's policy at issue proves reasonably related to a legitimate penological interest under *Turner*.

Peltier did not respond to the Defendants' argument regarding the application of the *Turner* factors to his First Amendment claim. In fact, Peltier concedes that Native American people at CCC were allowed to exercise their religion:

> The Defendants claim that there is no violation because they have numerously provide[d] the Native population a chance to exercise their First Amendment right to free exercise of religion. That is true, I agree fully to that statement.

(Doc. 50 at 2.) Summary judgment in favor of Defendants proves appropriate in light of this concession. The Court notes, however, that it addressed each *Turner* factor in a companion case arising from nearly identical circumstances. *Bearcomesout v. McTighe et al.*, Cause No. CV-21-68-GF-BMM, Or. (Doc. 50). The Court determined in *Bearcomesout* that summary judgment still was warranted in

Defendants' favor. *Id.* Summary judgment proves appropriate in Defendants' favor on Peltier's First Amendment claim under either scenario.

## II.     Fourteenth Amendment Claim.

The Equal Protection Clause requires the State to treat all similarly situated people equally. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). The Equal Protection Clause protects incarcerated people from intentional discrimination on the basis of their religion. *Cruz v. Beto*, 405 U.S. 319, 321–22 (1968), *abrogated on other grounds by Shakur*, 514 F.3d at 884–85. "This does not mean . . . that all prisoners must receive identical treatment and resources." *Hartmann v. Calif. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted). To establish an equal protection violation, an incarcerated person must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976); *see also Hartmann*, 707 F.3d at 1123.

Peltier fails to address his Fourteenth Amendment claim in his response to Defendants' summary judgment motion. (*See generally* Doc. 50.) Peltier instead expresses his frustration that CCC personnel failed to listen and respond to his concerns and treat the Native inmates with respect, whether intentionally or unintentionally. (*Id.* at 2–4.) The Court appreciates Peltier's position. Peltier's subjective thoughts do not establish a genuine dispute to material fact, however, as required under Fed. R. Civ. P. 56(a).

Defendants contend that they afforded Peltier, like others, numerous accommodations that he failed to account for, including the talking circle and make-up sweat lodge. Peltier grieved the cancellation of the sweat lodge ceremonies and alleged that other groups, including the Christian Rock of Ages program, were able to partake in their scheduled events. CCC responded by pointing out that Peltier had not yet designated his religious preference as Native American. (Doc. 45-2 at 1.) Peltier has failed to demonstrate how he was personally and adversely affected by the cancellations. Moreover, the Rock of Ages was a predetermined event organized by a national group and was held inside the prison with extra security personnel in place. (Doc. 41 at 15–16.)

Peltier provides no evidentiary support of Defendants' discriminatory intent beyond his theory regarding the Rock of Ages program. Peltier has produced no evidence of intentional discrimination based upon his Native American beliefs. Peltier's Fourteenth Amendment claim fails. The Court will grant summary judgment in Defendants' favor on Peltier's Equal Protection claim.

**ORDER**

Based on the foregoing, **IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 40) is **GRANTED.** The Clerk is directed to enter judgment in favor of Defendants and close the case file.

DATED this 19th day of July, 2023.

_____
Brian Morris, Chief District Judge
United States District Court